UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BESTWAY (USA), INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PIETRO PASQUALE-ANTONIO SGROMO, et al.,<br><br>Defendants. | Case No.17-cv-00205-HSG<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION; GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 79, 82 |

Pending before the Court in this interpleader action is a motion to compel arbitration by Defendant Pietro Pasquale-Antonio Sgromo ("Sgromo"), Dkt. No. 82, and a motion for summary judgment by Defendants-Crossclaimants Leonard Gregory Scott ("Scott") and Eureka Inventions LLC ("Eureka") (collectively referred to as "Crossclaimants"), Dkt. No. 79. For the reasons set forth below, the Court **DENIES** Sgromo's motion and **GRANTS** Crossclaimants' motion.[1]

## I.  BACKGROUND

Plaintiffs Bestway (USA), Inc.; Bestway (Hong Kong) International Ltd.; and Bestway Inflatables and Material Corp. (collectively referred to as "Plaintiffs") bring this interpleader action to determine who owns certain royalties. *See* Dkt. No. 1 (Complaint or "Compl.") at 1. They name four Defendants in the Complaint: Scott, Eureka, Sgromo, and Wagmore & Barkless LLC ("W&B"). Plaintiffs seek a determination regarding who is entitled to past royalty payments which are currently in escrow and flow from two license agreements. *See id.* at 11 (prayer for relief). Scott and Eureka subsequently filed a cross-claim against Sgromo and W&B, seeking an order declaring that they were entitled to the royalties and that they owned the intellectual property

---

[1] The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b).

in the license agreements. Dkt. No. 35 at 8 (prayer for relief).

**A.      Facts**

Scott, the sole member of Eureka, formerly had a "personal and professional relationship" with Sgromo. Dkt. No. 79-5 (Declaration of Leonard Gregory Scott, or "Scott Decl.") ¶¶ 1-2. In early 2013, Sgromo owned two sets of intellectual property rights: one for a "3-D vision system for swimming pools" (U.S. Patent No. 7,046,440, or "the '440 Patent"), and one for an "inflatable landing" that attached to a water slide. Scott Decl. ¶ 3. In June 2013, Sgromo "offered to transfer his ownership rights in the intellectual property to Eureka," as a way to repay Scott for money he had given or loaned to him over the course of their relationship. *See id.* ¶ 4. In furtherance of that offer, Sgromo's lawyer formed Eureka, with Scott as its sole member. *See id.* Sgromo also "served as a consultant to Eureka," and "had full authority to enter into license agreements with third parties on Eureka's behalf." *Id.*

Before the formation of Eureka, Sgromo "file[d] the paperwork necessary to assign and record the assignment of the '440 Patent" to Eureka and Scott. *Id.* ¶ 5; *see also* Dkt. No. 79-1 (Declaration of Thomas E. Moore III, or "Moore Decl."), Ex. A (patent assignment dated June 19, 2013 listing Scott as receiving party for '440 Patent). Eureka became a legal entity on June 25, 2013. *See* Scott Decl. ¶ 5. In the meantime, Sgromo negotiated a license agreement for the '440 Patent on Eureka's behalf with Plaintiffs,[2] which was executed on August 20, 2013. *Id.* ¶ 6; *see also id.*, Ex. A ("'440 Patent License Agreement"). As relevant here, the '440 Patent License Agreement named Plaintiffs as the Licensee, *see* '440 Patent License Agreement at 1, and represented that Scott was "the lawful owner" of the '440 Patent rights, *id.* ¶ 13(A). The agreement also stated that "Licensee agrees to pay to Eureka . . . [a] royalty of five percent (5%) of net sales of the licensed products by licensee or its sublicensees in the territory, reportable and payable on a calendar quarter basis." *Id.* ¶ 5(B) (caps removed); *see also id.* (listing Eureka's banking information).

On June 17, 2014, again on behalf of Eureka, Sgromo entered another license agreement

---

[2] Scott does not specify which of the three Plaintiffs Sgromo worked with, referring only to "Bestway."

2

with Plaintiffs, this one involving the inflatable landing for a water slide. Scott Decl. ¶ 7; *see also id.*, Ex. B ("Water Slide License Agreement"). As relevant here, the Water Slide License Agreement named Plaintiffs as the licensee, and represented that Eureka was the "sole and exclusive owner of all rights . . . in certain technology involving the use of an inflatable landing attached to the beginning of a children's backyard water slide." Water Slide License Agreement at 1. The agreement also stated that Eureka, the licensor, "shall be paid a royalty equaling three percent (3%) of the net sales derived by the Licensee for the sales of the Product with a maximum of $225,000 in Royalties per year." *Id.* ¶ 3(a) (caps removed); *see also id.* ¶ 3(c) (stating that royalties were to be "calculated and paid quarterly," and listing Eureka's banking information).

In February 2015, a disagreement arose between Sgromo and Plaintiffs regarding "the exclusivity of the two license agreements, among other things." Scott Decl. ¶ 8. Under the direction of Sgromo, Eureka filed suit against Plaintiffs Bestway (USA), Inc. and Bestway (Hong Kong) International, Ltd. *See id.*; Moore Decl., Ex. B (complaint). After Scott and Sgromo's relationship "ended badly" in July 2015, *see* Scott Decl. ¶¶ 2, 10, Scott "took charge" of that lawsuit against Plaintiffs, which eventually settled on October 21, 2015, *id.* ¶ 11. Prior to the settlement, however, Sgromo had begun to make his own claims to the royalties governed by the two license agreements, and "initiated binding arbitration against" Scott. *See id.* ¶¶ 11-12. As a result, Eureka's settlement with Plaintiffs "provided that Bestway would put the royalties into escrow pending the outcome of the arbitration." *Id.* ¶ 11. Sgromo and Scott attended mediation in April 2016, but Sgromo "became too erratic to continue with the mediation process," and ultimately "refused to participate further in the arbitration process and abandoned it." *Id.* ¶ 12.

Effective May 31, 2017, Plaintiffs terminated the '440 Patent License Agreement. *Id.* ¶ 15. All royalties were reported as of January 15, 2017. *See id.* Effective August 15, 2017, Plaintiffs terminated the Water Slide License Agreement. *Id.* ¶ 16. Scott "executed an assignment of [his] and Eureka's rights in the water slide to Bestway on September 26, 2017," and was intended to "receive a last quarterly royalty report for the sales of Bestway products under the [Water Slide

3

License Agreement] by April 15, 2018." *Id.*[3]

**B.    Procedural Posture & Sgromo's Motion to Compel Arbitration**

Plaintiffs filed the Complaint on January 13, 2017. Dkt. No. 1. Scott and Eureka filed an answer and their crossclaim on May 8, 2017. Dkt. No. 35. Neither Sgromo nor W&B answered the Complaint.

On December 6, 2017, Plaintiffs, Scott, and Eureka filed a joint request for entry of default against Sgromo and W&B, due to the latter's "fail[ure] to appear or otherwise respond to the complaint." Dkt. No. 62 at 2.[4] The Clerk declined to enter default on December 7, 2017. Dkt. No. 65. Plaintiffs, Scott, and Eureka subsequently filed an administrative motion under Civil Local Rule 7-11 with the Court, styled as a joint motion for entry of default, on the same grounds. *See* Dkt. No. 73. In response, the Court set a telephonic conference for January 30, 2018, at which counsel for Plaintiffs, Scott, and Eureka agreed that Scott and Eureka would file a motion for summary judgment to resolve the interpleader rather than seek a default judgment. *See* Dkt. No. 75.

On March 5, 2018, Crossclaimants filed their motion for summary judgment. Dkt. No. 79 ("Mot."). Neither Sgromo nor W&B filed an opposition. Crossclaimants did not file a reply brief.

---

[3] This September 2017 assignment of the rights to the inflatable landing occurred after Crossclaimants filed their answer in May 2017, which presumably moots their request for declaratory relief with respect to the ownership of this intellectual property. In any event, in their motion for summary judgment, Crossclaimants seem concerned only with establishing ownership of the intellectual property *at the time the license agreements were entered*. *See* Mot. at 8. Accordingly, this is the question that the Court will determine, and nothing in this Order is meant to alter the separate assignment of rights mentioned by Scott in his declaration. *See* Scott Decl. ¶ 16.

[4] Sgromo, who is proceeding pro se, has unsuccessfully sought relief from the Court twice over the course of this action, his failure to answer notwithstanding. *See* Dkt. No. 50 (denying Sgromo's motion for summary judgment); Dkt. No. 80 (denying Sgromo's motion to transfer the action). Sgromo also appealed the Court's denial of his motion for summary judgment, *see* Dkt. No. 51, which the Ninth Circuit summarily dismissed for lack of jurisdiction given the interlocutory nature of the Court's order, *see* Dkt. No. 62. Sgromo has also filed a number of frivolous motions in this action. *See, e.g.*, Dkt. No. 64 ("Notice of Right to Sue"); Dkt. No. 66 (request by Sgromo to reconsider dismissing the action). Finally, the Court notes that Sgromo has consistently and improperly purported to represent W&B, despite the fact that he is not an attorney. *See In re Am. W. Airlines*, 40 F.3d 1058, 1059 (9th Cir. 1994) (per curiam) ("Corporations and other unincorporated associations must appear in court through an attorney."); Civil L.R. 3-9(b) ("A corporation, unincorporated association, partnership or other such entity may appear only through a member of the bar of this Court.").

1  On May 31, 2018, the Court took the motion under submission and vacated the scheduled hearing.
2  Dkt. No. 81. That same day, Sgromo filed a "Notice of Arbitration Filed and Further
3  Reconsideration of This Court to Dismiss the Action with Prejudice" ("Notice"), claiming that this
4  dispute fell within the scope of a previously-unmentioned arbitration agreement. Dkt. No. 82. On
5  June 1, 2018, the Court ordered Plaintiffs, Scott, and Eureka to show cause "why, if the Court
6  were to construe [Sgromo's motion] as a motion to compel arbitration, such a motion should not
7  be granted." Dkt. No. 83. Plaintiffs, Scott, and Eureka filed their responses on June 15, 2018.
8  *See* Dkt. Nos. 84 (Scott and Eureka's response), 86 (Plaintiffs' redacted response).[5]

## II. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008). If a court finds that there is no genuine dispute of material fact as to only a single claim or defense or as to part of a claim or defense, it may enter partial summary judgment. Fed. R. Civ. P. 56(a).

With respect to summary judgment procedure, the moving party always bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving

---

[5] Sgromo filed a response that same day, *see* Dkt. Nos. 87, 88, which the Court did not request and therefore does not consider.

5

party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party will bear the burden of proof on an issue at trial, it must also show that no reasonable trier of fact could not find in its favor. *Celotex*, 477 U.S. at 325. In either case, the movant "may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Nissan Fire*, 210 F.3d at 1105. "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102-03.

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment," because the duty of the courts is not to "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or defense, courts must enter summary judgment in favor of the movant. *Celotex*, 477 U.S. at 323.

## III. DISCUSSION

Crossclaimants contend that there is no triable issue of fact with respect to the two salient issues: (1) which parties are entitled to the royalties being held in escrow by Plaintiffs; and (2) which parties were the rightful owners of the intellectual property governed by the '440 License Agreement and the Water Slide License Agreement at the time those agreements were entered. *See* Mot. at 7. The Court agrees. As a preliminary matter, however, the Court addresses Sgromo's belatedly-filed Notice.

### A. The Court Construes Sgromo's Belatedly-Filed Notice As a Motion to Compel Arbitration, and Denies the Motion.

Sgromo styles his Notice as presenting two issues, one of which is "[w]hether this court should reconsider its previous decision to quash service and dismiss this action with prejudice in

its entirety." Notice at 3. While it is unclear what Sgromo refers to in mentioning a "previous decision to quash service," the gravamen of the motion is that "[t]he disputes between Sgromo et al. and Scott et al. are governed by a separate arbitration agreement." *Id.* (citation omitted). The Court accordingly construes Sgromo's filing as a motion to compel arbitration. Specifically, Sgromo purports to proffer seven arbitration agreements—six between him and Plaintiffs, and one between him and Scott—that mandate arbitration of the instant dispute. *See id.* Plaintiffs and Crossclaimants counter, as relevant here, that Sgromo has waived any right to compel arbitration by virtue of his litigation conduct. *See* Dkt. No. 84 at 5-8 (Crossclaimants' argument); Dkt. No. 85 at 7-8 (Plaintiffs'). The Court agrees with Plaintiffs and Crossclaimants, and denies Sgromo's motion.

Whether a party has waived its right to arbitrate by its litigation conduct is a question "for judicial determination unless the parties clearly and unmistakably provide otherwise." *Martin v. Yasuda*, 829 F.3d 1118, 1123 (9th Cir. 2016) (citing *Howsame v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). The burden of proving that a party has waived its right to arbitrate in this way is a heavy one. *See id.* at 1124 (citation omitted). "[A] party seeking to prove waiver of a right to arbitration must demonstrate (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Id.* (citation omitted).

Here, the Court assumes (without deciding) that the seven purported arbitration agreements cited by Sgromo apply to the dispute at hand, in order to reach the parties' arguments that he waived his right to arbitrate. The Court also finds that the broad, vague language in each of those agreements does not "clearly and unmistakably" provide that the question of waiver is to be determined by an arbitrator rather than a court. *See* Notice at 3. Turning to the question of waiver under *Martin*, the Court finds that Sgromo's litigation conduct plainly evinces a waiver of his right to compel arbitration in this action. First, Sgromo clearly had "knowledge of an existing right to compel arbitration": he attached to his Notice a "Demand for Arbitration Form" naming Plaintiffs, *see* Notice, Ex. A, and previously initiated binding arbitration against Scott, only to later abandon the effort, *see* Scott Decl. ¶¶ 11-12. Second, his conduct has been wholly "inconsistent with that

7

existing right," even setting aside his abandonment of the previous arbitration with Scott. For example, when Plaintiffs brought this interpleader action, Sgromo sought several forms of relief (*i.e.*, summary judgment and transfer), which the Court denied. *See* Dkt. Nos. 50, 80. He then represented to Plaintiffs that he no longer intended to participate in this action—apparently as a matter of principle—and never filed an answer.[6] In keeping with that approach, Sgromo did not respond to Crossclaimants' motion for summary judgment, which they filed on March 5, 2018—although he did file his motion to compel *after* the Court took the summary judgment motion under submission on May 31. Last, Sgromo's "inconsistent acts" would prejudice Plaintiffs and Crossclaimants. If this Court compelled arbitration, the resources expended on this lawsuit by Plaintiffs and Crossclaimants would be wasted because of Sgromo's unreasonable delay—and Plaintiffs would be no closer to an answer with respect to their interpleader.

In short, Sgromo has spent more than 16 months litigating this case since he first sought permission to file electronically in February 2017, *see* Dkt. No. 10, and only now—on the eve of summary judgment—does he seek to compel arbitration. Granting his motion at this juncture would, simply put, be unfairly prejudicial to Plaintiffs and Crossclaimants, and would reward his evasive litigation conduct. Accordingly, the motion is denied.

### B. Crossclaimants' Undisputed Evidence Establishes, on Its Face, Their Entitlement to the Royalties at Issue.

Turning to Crossclaimants' motion for summary judgment, the salient evidence they proffer is the '440 Patent License Agreement and the Water Slide License Agreement. On their face, the agreements plainly establish that Eureka is entitled to any royalties flowing from the '440 Patent License Agreement and the Water Slide License Agreement. *See* '440 Patent License

---

[6] In Plaintiffs' and Crossclaimants' joint motion for entry of default, the parties represented that Sgromo "confirmed he would not be filing an answer in this case," Dkt. No. 73 at 4, and "has also expressly stated his refusal to defend the case on the merits," *id.* at 5. As support, the parties attached an email by Sgromo, dated November 10, 2017, in which he indicated that he did not intend to file an answer. *See* Dkt. No. 73-1 (Declaration of Thomas E. Moore III in Support of Parties' Joint Administrative Motion to Enter Default), Ex. B (stating that "[w]hat Bestway chooses to do with those royalties has no impact on me" and asserting "[t]here is no jurisdiction in [California]"). Seventeen days later, in another email, Sgromo expressly stated, "I am not giving [this] action any more time. . . . In a nutshell, [I] do not have to even answer anything anymore and will not." *Id.*, Ex. C.

8

Agreement ¶ 5(B); Water Slide License Agreement ¶¶ 3(a), 3(c). They also establish that Scott owned the '440 Patent at the time of the '440 Patent License Agreement and that Eureka owned the inflatable landing design at the time of the Water Slide License Agreement. *See* '440 Patent License Agreement ¶ 13(A); Water Slide License Agreement at 1; *see also* Moore Decl., Ex. A (patent assignment); Scott Decl. ¶¶ 4-7. Critically, this evidence is undisputed, given Sgromo's refusal to meaningfully respond to Crossclaimants' motion and W&B's failure to appear in this action altogether. Nor is there any challenge with respect to the authenticity of Crossclaimants' evidence.

In this case, Crossclaimants have surpassed the requirements of their burden of production by proffering evidence that, on its face, establishes entitlement to the royalties and ownership of the intellectual property. *See Celotex*, 477 U.S. at 323. Sgromo and W&B, in contrast, have failed to respond to Crossclaimants' motion altogether, and as a result have not met their obligation under Rule 56 to "produce evidence to support [their] claim." *See Nissan Fire*, 210 F.3d at 1103. While failure to file an opposition is not grounds for granting summary judgment, the Court finds that in these circumstances, Crossclaimants have met their "affirmative duty under Rule 56 to demonstrate [their] entitlement to judgment as a matter of law." *See Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003); *see also Celotex*, 477 U.S. at 323 (holding that where nonmoving party fails to produce evidence that supports its claim, courts must enter summary judgment in favor of movant).

//
//
//
//
//
//
//
//
//

9

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Sgromo's motion to compel arbitration and **GRANTS** Crossclaimants' motion. Plaintiffs are directed to file a proposed order and judgment distributing the subject funds in accordance with this order no later than July 11, 2018. This order terminates as moot Docket Number 73.

**IT IS SO ORDERED.**

Dated: 7/2/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge